IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 10-cv-03171-RPM

TODD SPERRY,

    Plaintiff,

v.

JASON T. MAES, individually, and in his official capacity as a detective with the Castle Rock Police Department,
GEORGE ELDER, individually, and in his official capacity as an officer with the Castle Rock Police Department, and
TOWN OF CASTLE ROCK, COLORADO, a municipality,

    Defendants.
_____

## MEMORANDUM OPINION AND ORDER
_____

Plaintiff Todd Sperry asserts two claims for relief against the Town of Castle Rock and Castle Rock Police Officer George Elder and Detective Jason Maes, arising out of an investigation, arrest, and prosecution of Sperry for debit card fraud. First, Sperry claims under 42 U.S.C. § 1983 that Defendants engaged in malicious prosecution, in violation of the Fourth Amendment. Second, Sperry claims that Defendants violated Title II of the Americans with Disabilities Act ("ADA") by failing to recognize and accommodate his limited cognitive capacity in evaluating his conduct. Defendants moved for summary judgment of dismissal.

The following facts are considered provable. On November 13, 2007, Todd Sperry's son Ethan was killed in a car crash. The next day, Sperry went to the scene and was shocked by what he saw. He called Castle Rock Police to complain that the scene had not been

cleaned properly and stated that a portion of Ethan's decapitated head was left there. Officer Williams responded and Sperry asserted that Officer Williams callously shoveled bits of what appeared to be Ethan's brain matter to the side of the road. Sperry took photographs.

In anger and frustration, Todd Sperry repeatedly complained to Castle Rock Police Corporal Ty Peterson. Peterson, angered by Sperry's complaints and conduct, demanded that Sperry turn over his photographs. Sperry refused. Sperry claims that, over the next thirteen months, Castle Rock Police conducted a campaign of harassment, intimidation, and surveillance to obtain the photographs in retaliation for his criticisms of the Department.

On February 2, 2008, Todd Sperry received an "instant issue" debit card from H&R Block Bank with a balance of $1,863.09, the amount of his federal tax refund from that year. Three days later, H&R Block sent Sperry a personalized debit card. The balance from the "instant issue" card was transferred over.

Between April 14, 2008 and June 6, 2008, Sperry used his H&R Block debit card for approximately 73 purchases at a Service Oil gas station in Castle Rock, for a total of $5,100. Every purchase was ultimately charged back to the gas station because Sperry's debit card account had insufficient funds—indeed, it had a balance of -$76.56 when he made his first purchase at the station. After Sperry's card was declined for the first time on June 6, 2008, he never returned to the station. Sperry and his family moved to California in August 2008.

Clifton Porter, a District Manager for Bradley Petroleum, owner of Service Oil, began investigating Sperry's charges. Porter discovered that none of the 73 transactions were approved by the bank. Whenever Sperry swiped his card, the computer would notify the store clerk that the transaction was denied and advise the clerk to call the bank for authorization. When the clerk informed Sperry about the notification, Sperry gave the clerk

the number #1932. When the clerk entered that number, the transaction was authorized. It is unclear why that worked.

On July 8, 2008, Porter went to the Castle Rock Police Department to file a police report. He met with Officer George Elder. Porter provided Elder written statements from the gas station clerks who conducted the transactions with Sperry, the receipts for Sperry's purchases, and documents accounting for the returned charges. Elder took Porter's statement and then drafted a police report. Thereafter, Elder was not involved in the investigation.

On July 15, 2008, Detective Jason Maes was assigned to Sperry's case. He reviewed Officer Elder's report and conducted a photo lineup. Each gas station clerk identified Todd Sperry from the lineup as the person who made the charges.

Detective Maes then contacted H&R Block and spoke to Mark Bigler, a Senior Fraud Analyst. Bigler told Maes that, due to the nature of the account, Sperry should not have been able to make purchases on the card if he had insufficient funds. Bigler further stated that H&R Block did not provide Sperry a 4-digit code for transactions on the card, and that Sperry must have somehow obtained one.

On August 29, 2008, Detective Maes subpoenaed H&R Block's debit card statements for Todd Sperry. Upon reviewing the statements, Maes noted that Sperry never added additional funds to the debit card; the debit card already had a negative balance when Sperry first used the card at the gas station; and that, on a couple of occasions, Sperry made multiple purchases at the station on the same day. Detective Maes also found it suspicious that Sperry used the card with such frequency, then never returned to the station after it was declined.

Based on the circumstances, Detective Maes determined that there was probable cause that Todd Sperry had committed theft under Colorado Revised Statutes § 18-4-401(a).

Maes completed an Affidavit in Support of Arrest on September 4, 2008, detailing his investigation and findings. Detective Maes had no contact with the Douglas County District Attorney's Office about Sperry's case until July 9, 2011, when he was asked to re-interview Mark Bigler and the two gas station clerks. Otherwise he was unconnected to the prosecution.

Upon reviewing Detective Maes' Affidavit, the Deputy District Attorney Chris Gall found probable cause to file a Motion for Arrest Warrant, which was granted on November 7, 2008. Charges were filed against Sperry in Douglas County court. On January 7, 2009, Orange County, California Sheriff's deputies arrested Sperry pursuant to the warrant. Sperry was released on bond. From January 2009 to September 2010, three Douglas County Deputy District Attorneys – Kristine Rolfes, Jay Williford, and Brittany Martin – worked on Sperry's case. Each of them believed that probable cause existed based on their review of the case file.

The District Attorney agreed to dismiss the charges against Sperry on September 30, 2010, five days before trial, after Sperry agreed to repay Bradley Petroleum for the charges incurred on his card. This lawsuit ensued.

Todd Sperry first asserts a malicious prosecution claim against Officer Elder, Detective Maes, and the Town of Castle Rock. A malicious prosecution claimant must prove the following by a preponderance of the evidence: (1) the defendant caused the plaintiff's prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Todd Sperry's claims against Officer Elder in his individual and official capacities fail because Sperry has not shown any factual support for finding that Elder caused his prosecution. A police officer cannot be deemed the "cause" of a plaintiff's prosecution unless it is shown that the officer exerted improper pressure or influence over the prosecutor or concealed or misrepresented material facts to the prosecutor. *Barton v. City and County. Of Denver*, 432 F. Supp. 2d 1178, 1207 (D. Colo. 2006). Elder had no involvement in the Sperry case after he interviewed Clifton Porter and completed the initial report.

Sperry contends that Elder's report concealed Sperry's disability and misrepresented how Sperry conducted the 73 transactions. Sperry maintains that Elder knew about his disability because: (1) Sperry's neighbor observed an African-American officer monitoring Sperry's home sometime before the report was written (Elder was the only African-American on the force at the time); (2) Elder had investigated Sperry for illegal dumping in December 2007; and (3) Castle Rock Police Chief Tony Lane testified that the entire Police Department was aware of Sperry's disability and the potential safety risks he presented. Even assuming that Elder monitored Sperry's home on one occasion, and investigated Sperry for illegal dumping, both Sperry and his wife testified that they never met Elder or interacted with him, except for a single phone call pertaining to the illegal dumping investigation. And although Police Chief Lane acknowledged informing certain Department officers that Sperry had issues, those concerns were framed in terms of Sperry's pained reaction to his son's death, and his irrational and aggressive behavior towards the police and others. It may be assumed that it was widely known in the Police Department that Sperry's behavior was unusual; that is not the equivalent of knowledge that his condition required some accommodation for a

mental disability. Elder could not have knowingly concealed Sperry's disability when he drafted the police report.

Sperry has also failed to show that Officer Elder misrepresented the details of Sperry's gas station transactions. While Sperry disputes Clifton Porter's description of how Sperry was able to perform those transactions, Sperry does not once suggest that Officer Elder had any reason to question the information Porter provided him, or that Elder inaccurately memorialized that information. To the contrary, Elder's police report accurately reflects the statements given by Porter and the gas station clerks, and the accompanying documentation. Accordingly, Officer Elder did not misrepresent material facts in his police report.

Officer Elder is entitled to judgment as a matter of law on Sperry's malicious prosecution claim.

Todd Sperry's malicious prosecution claim against Detective Maes raises the issue of whether it was reasonable for Maes to conclude, based on the facts and circumstances within his knowledge, that there was probable cause to believe that Sperry committed an offense. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (quotations and citation omitted).

Sperry argues that probable cause did not exist for two reasons. First, he maintains that Detective Maes knew about Sperry's disability, and therefore knew that the more likely explanation for Sperry's charges was that Sperry did not know how to manage his bank account. And, since theft is a specific intent crime, Maes must have known that intent was lacking. The problem with Sperry's theory is the premise. Assuming Detective Maes knew

6

that Sperry was considered to act irrationally at times and was to be treated with caution, there is nothing in the record suggesting that Maes should have considered Sperry to have been unable to perform math functions, understand the finite nature of his H&R Block card, or keep tabs on his account balance.

Second, Sperry alleges that Detective Maes misrepresented his conversation with H&R Block's Mark Bigler regarding the gas station's credit card processing system that, if properly presented, would have defeated probable cause. Maes' Affidavit for Arrest Warrant states that Bigler told him "that the PIN # that Sperry gave the clerks was a pre-authorization code, which Sperry should not have access to." According to Sperry, Bigler denied telling Maes that #1932 was either a PIN or a pre-authorization code, and, if Maes' Affidavit made clear that Bigler was not wrongfully in possession of the code, Sperry's intent would have been subject to question. Regardless of how Sperry's debit card code was characterized, his use of the code had the effect of authorizing transactions that, in regular course, should have been denied. The manner in which Sperry used the debit card supported probable cause: his account was already overdrawn when he first started making purchases at the gas station; he continued making purchases in large amounts, sometimes twice or three times a day; he ultimately spent over $5,000 in a two-month span; he did not use the card at any other location; and, when his card was finally declined, he never returned. Accordingly, summary judgment is warranted on Todd Sperry's malicious prosecution claim against Detective Maes.

Because Sperry has failed to show that either Officer Elder or Detective Maes violated his constitutional rights, his malicious prosecution claim against the Town of Castle

7

Rock under a municipal liability theory also fails. *See Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154-56 (10th Cir. 2001).

That leaves Sperry's ADA claim, which can only be brought against the Town and Officer Elder and Detective Maes in their official capacities. *See Nasious v. Colorado – Office of Governor Ritter*, No. 09-cv-01051, 2011 WL 2601015, at *3 (D. Colo. June 29, 2011) (no individual capacity liability under ADA) (citing *Everson v. Leis*, 556 F.3d 484, 501 (6th Cir. 2009)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Title II claims can arise from police investigations and arrests under two theories. The first is that the police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity. *See Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999). The second is that, while the police properly investigated and arrested a person with a disability for a crime unrelated to that disability, they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees. *Id.* at 1220-21.

For the wrongful arrest theory to apply, the conduct that is mistaken for criminal activity must actually be lawful. Thus, the theory applied to a case where a stroke victim was arrested for driving under the influence, even though he had actually been driving sober, *see Jackson v. Town of Sanford*, No. 94-12-P-H, 1994 WL 589617, at *6 (D. Me. Sept. 23, 1994), and to a case where a deaf man was charged with resisting arrest, when in fact he

simply could not hear the officers' orders, *see Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997). In *Gohier*, by comparison, the Tenth Circuit concluded that the theory did not apply when a schizophrenic man physically threatened a police officer; even though the court concluded that the man's behavior was related to his disability, the behavior was not lawful—rather, it was assault. *See Gohier*, 186 F.3d at 1221.

Todd Sperry argues here that his conduct was lawful because, given his disability, he could not have formed the *mens rea* required for theft under Colorado law. While that may have been apparent with the benefit of hindsight, the wrongful arrest theory focuses on the circumstances known to the officer at the time an arrest is made, and how police responded. *Compare Lewis*, 960 F. Supp. at 176-77 (arrest for resisting law enforcement unwarranted because officers knew man was deaf), *with Gohier*, 186 F.3d at 1222 (use of force in self-defense warranted given threatening conduct of man known to the officer to be mentally ill). The question is not whether the police were ultimately correct in assessing the legality of the plaintiff's conduct, but whether that assessment was reasonable. *See Gohier*, 186 F.3d at 1222 ("When [the officer] shot [the schizophrenic man], he reasonably thought it necessary to do so to avoid serious harm or death.") As discussed above, construing the facts and drawing all reasonable inferences in Sperry's favor, he has only established that Defendants knew that he behaved erratically following his son's death, which led to him being placed on a temporary medical hold, and that he had general mental health issues. There is nothing in the record to suggest that Defendants were aware that Sperry's disability made him incapable of handling his financial affairs. And given Sperry's course of conduct – charging $5,000 to an overdrawn card at a single location in two months by somehow overriding the transaction system, then abruptly stopping once his card was declined – it was reasonable for Defendants

to believe that he was behaving intentionally. Based on that record, Defendants' decision to arrest Sperry was not unwarranted.

In support of his reasonable accommodation theory, Sperry appears to argue that Defendants should have inquired about his disability during the investigation or factored it into their assessment of his conduct. Plaintiff does not cite to any statute or case law establishing that the ADA's reasonable accommodation requirement includes a duty to investigate a disability in all criminal inquiries. Even assuming the ADA imposes such a duty where there is reason to believe a disability exists, here, Sperry's course of conduct did not bear any indicia of mental illness or infirmity. Defendants did not have reason to believe that Sperry was manifesting mental illness as opposed to defrauding the gas station. Defendants' failure to consider Sperry's disability in evaluating his conduct does not amount to a failure to accommodate, since they were not aware of its extent and severity.

Finally, Sperry nods to *Gohier*'s dicta concerning a failure to train, presumably to argue that the Town of Castle Rock's failure to provide mental health training for police officers amounted to a failure to accommodate. But Sperry does not flesh out his argument in any meaningful depth, and the Court will not do so for him.

In sum, Todd Sperry has failed to present facts from which a reasonable juror could conclude that Defendants denied him the Town's services, programs, or activities, or discriminated against him because of his mental illness. Rather, the record clearly shows that Defendants investigated his conduct and arrested him because there was probable cause to believe that he had committed debit card fraud. Defendants are entitled to summary judgment on Sperry's ADA claim.

Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment is granted. The Clerk will enter judgment dismissing this civil action.

Dated: July 10, 2013.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch
Senior District Judge